UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAN J. RAMOS, LAURA POSADAS, and TINA WILLIAMS | ) ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | Civil Action No.  SA-14-CA-502-XR |
| VS. | ) | |
| | ) | |
| UBER TECHNOLOGIES, INC. and LYFT INC., | ) ) | |
| | ) | |
|     Defendants. | | |

**ORDER**

On this date, the Court considered the Motion to Dismiss Plaintiff's Complaint (docket no. 6) filed by Uber Technologies, Inc. and the Corrected Motion to Dismiss Complaint (docket no. 10) filed by Lyft Inc.  Defendants challenge whether Plaintiffs had standing to file their claims under Title III of the Americans with Disabilities Act at the time of filing the Original Complaint and whether their complaint states a claim for relief.

**I. Background**

According to the Complaint, Plaintiffs Posadas, Ramos, and Williams are mobility-impaired individuals who use wheelchairs and require wheelchair accessible vehicles for their transportation needs or other accommodating services such as assistance with storing their wheelchairs.  Docket no. 1 at ¶¶ 2, 7-9, 16.  Plaintiffs allege that Uber and Lyft operate "vehicles for hire" in San Antonio as defined under CSACO Section 330003.  *Id.* ¶ 12, 13.  Plaintiffs allege that Uber and Lyft "both engage in a demand responsive system as defined by 42 U.S.C. § 12181.[1]  *Id.* at ¶ 14.  Plaintiffs allege that Uber and Lyft "have entered the vehicle-for-hire market in both Houston and San Antonio.  Uber and Lyft customers use a smartphone app to locate, schedule, and pay for their travel.

---

[1] The term "demand responsive system" means any system of providing transportation of individuals by a vehicle, other than a system which is a fixed route system.  42 U.S.C. § 12181(3).

Consumers enter into contracts and business relationships whereby Uber and Lyft transport the consumer(s) to their desired location and the consumer(s) agree to pay for the services with a credit car via their smartphone." *Id.* ¶ 15.

Plaintiffs filed this lawsuit alleging that Defendants Uber and Lyft "do not provide vehicles-for-hire services to mobility impaired consumers such as Plaintiffs who require wheelchair accessible transportation vehicles or other accommodating service." *Id.* ¶ 2.  Plaintiffs further allege that Uber and Lyft "allow their vehicles-for-hire to deny service to the disabled" and "provide no training or guidance to the vehicles-for-hire that use their service concerning lawfully meeting the needs of disabled customers." *Id.*  Plaintiff assert that they bring suit "because Defendants Uber and Lyft have failed to offer services required by the ADA to mobility impaired individuals such as Plaintiffs Posadas, Ramos and Williams." *Id.* ¶ 3.  The Complaint alleges that Uber and Lyft do "not provide any manner for securing a wheelchair accessible vehicle or providing services at all for customers such as Plaintiffs Posadas, Ramos, and Williams." *Id.* at ¶¶ 17-18.  The Complaint asserts a claim for "Discriminat[ion] Against Mobility Impaired Citizens" in violation of 42 U.S.C. § 12184(a)[2] and seeks equitable relief pursuant to 42 U.S.C. § 12188.

Defendants Lyft and Uber both filed motions to dismiss.  Both Defendants move to dismiss for lack of jurisdiction under Rule 12(b)(1), arguing that Plaintiffs lacked standing at the time the Complaint was filed.  Defendants also both move for failure to state a claim under Rule 12(b)(6). This Order considers only the 12(b)(1) portion of the motions.

## II. Standard of Review

The Court must dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  In deciding a motion to dismiss pursuant

---

[2]Section 12184(a) provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." 42 U.S.C. § 12184(a).  "Specified public transportation" means "transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public or special service (including charter service) on a regular and continuing basis."  42 U.S.C. § 12181(10).

to Rule 12(b)(1), the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560-61). Particularized means "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. *Id.* At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561; *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir. 2001).

### III. Analysis

This Court has previously considered standing to assert Title III claims in its Orders in *Betancourt v. Federated Department Stores*, 732 F. Supp. 2d 693 (W.D. Tex. 2010) and *Betancourt v. Ingram Park Mall, L.P.*, 735 F. Supp. 2d 587 (W.D. Tex. 2010). The *Betancourt* cases dealt with public accommodations.[3] As this Court noted, under the terms of the ADA, injunctive relief is available "to any person who is being subjected to discrimination on the basis of disability in violation of [Title III]." 42 U.S.C. § 12188(a)(1). Although "any person who is being subjected to

---

[3] The parties dispute whether Plaintiffs must establish that Defendants are public accommodations and whether Defendants are in fact public accommodations. The Court need not decide that issue at this time, however.

discrimination based on disability in violation of" Title III has a cause of action, whether a plaintiff has a cause of action is a distinct issue from whether she has standing under Article III. *Betancourt v. Federated*, 732 F. Supp. 2d at 701-02 (citing *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (noting the difference between having a cause of action and standing)). Thus, because a federal plaintiff must demonstrate standing for each type of relief sought, and the relief available to a Title III ADA plaintiff is injunctive relief, a plaintiff must satisfy the Article III standing requirements for injunctive relief. Further, "whether a person has Article III standing to sue under [a particular statute] depends in great measure on the particular rights conferred by th[at] statute[ ]." *Betancourt*, 732 F. Supp. 2d at 707. It follows that whether a plaintiff has suffered an injury in fact sufficient to confer standing under Title III is determined largely by the rights conferred by the ADA. *Id.*

Uber makes various arguments in support of its 12(b)(1) motion. Most of these arguments ultimately go to the merits of Plaintiffs' claims. Uber argues that (1) "[b]ecause Uber is not violating Title III, Plaintiffs cannot be deterred from participating in Uber's service" and have suffered no injury; (2) Uber is not required to provide accessible vehicles or accommodations; (3) Plaintiffs failed to request or identify a reasonable accommodation; (4) Plaintiffs fail "to allege any facts to show a causal relationship between Uber's App and any alleged discriminatory acts"; (5) "[b]ecause Uber is not required to provide training to its App-users, Plaintiffs' alleged injury cannot be 'fairly traceable' to Uber's conduct"; (6) a favorable ruling from this Court will not redress Plaintiffs' alleged injury because Uber already complies with Title III's non-discrimination mandates that apply to taxi services; and (7) Plaintiffs must prove that Defendants are places of public accommodation and Defendants are not are places of public accommodation. The Fifth Circuit has acknowledged that "whether the ADA applies to convey federal jurisdiction is intertwined with the merits," such that the court finds jurisdiction and deals with the challenges as an attack on the merits. *Mann v. La. High School Athletic Ass'n*, 535 F. App'x 405, 408 (5th Cir. 2013). Under such circumstances, a 12(b)(1) dismissal is improper. And consideration of facts outside the complaint is improper in resolving a 12(b)(6) motion. Therefore, Uber's motion is denied in part insofar as it relies on these arguments.

However, both Lyft and Uber challenge standing based on the fact that at the time of filing suit, Plaintiffs had not yet actually tried to use their apps to obtain a ride and had not actually been

-4-

denied service from Lyft or Uber.  Lyft argues that Plaintiffs lack standing because they "do not allege that they have ever used the Lyft platform, much less that they have been denied service by Lyft or suffered any other form of discrimination by Lyft on the basis of a disability."  Lyft further asserts that "Plaintiffs fail to plead any facts to suggest they have any personal knowledge regarding Lyft's ADA compliance whatsoever."  Uber contends that Plaintiffs' allegations are speculative because they do not allege that they ever used the app, were ever denied service or know of others who were denied service, or that a driver ever refused to stow mobility equipment.[4]

Whether an ADA plaintiff must have suffered such past denial of services to have standing to assert a claim and to obtain injunctive relief is not entirely settled in the case law.  This Court (in the *Betancourt* cases) and other courts have recognized that the deterrent effect of architectural barriers or other Title III violations and the denial of opportunity inflict injury sufficient to confer standing.  The denial of an opportunity to benefit from services, whether caused by direct interaction with barriers or discriminatory actions or policies or by their resulting deterrent effect and loss of opportunity, is a sufficient injury for standing purposes.  Accordingly, the fact that Plaintiffs in this case had not tried to use Uber or Lyft before filing suit is not alone sufficient to find a lack of standing.

This holding is not only consistent with the plain language of the ADA but also Supreme Court precedent on standing.  In *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167 (2000), the Supreme Court did not require the plaintiffs to swim in a polluted river to have standing.  Rather, it was sufficient that the plaintiff alleged that he lived near defendant's facility, occasionally drove over the river and that the river looked and smelled polluted, and that he would like to fish, camp, swim, and picnic near the river but would not do so because he was concerned that the water was polluted by Laidlaw's discharges.  The fact that the plaintiff was being

---

[4]In its reply (docket no. 22), Uber emphasizes that its standing argument "did not rely on the fact that Plaintiffs had not used or attempted to use Uber's App."  Docket no. 22 at 3 (emphasis omitted).  However, although it's true that Uber did not base its standing argument on this point, it did assert that Plaintiff's claims "are entirely conclusory and speculative" insofar as they "do not allege they ever used Uber's App, were ever denied service or know of other denied service, or that a driver ever refused to stow mobility equipment."  Docket no. 6 at 5.  Whether Plaintiffs' claims are speculative on these bases is relevant to standing.

deterred from visiting the river by Laidlaw's conduct, and that plaintiff suffered the loss of opportunity to enjoy the river, were sufficient to establish injury and standing.

The ADA expressly recognizes that an ADA plaintiff need not have visited an establishment or requested services if the plaintiff knows doing so will result in discrimination. It provides that "[n]othing in this section [§ 12188] shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188. Thus, there is no requirement that a plaintiff in a wheelchair enter or try to enter an establishment that is not wheelchair accessible to establish standing - it is enough that the plaintiff is aware that the establishment is not wheelchair accessible and is thereby deterred from visiting the establishment because they know they will suffer discrimination if they go there. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) ("Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, see 42 U.S.C. § 12188(a)(1), they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) ("under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury," and "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues"). If the plaintiff knows a business has no accessible entrance, the plaintiff should not be forced to go to the building and sit outside. The injury – being unable to enter the building – exists either way. Traveling to such an establishment would be a "futile gesture" under § 12188.

Similarly, there is no requirement that a plaintiff seek services and be denied, so long as the plaintiff has actual notice that she would be denied service in violation of the ADA (in other words, that the defendant does not intend to comply with the ADA). Therefore, the Court agrees with Plaintiffs that they were not required to attempt to use Defendants' apps or services in order to have standing to bring an ADA claim against them.[5] However, they must do more than speculate – they

---

[5] As noted, however, the law is not settled. Some courts would require a plaintiff to have visited an establishment or have requested services to establish standing. And Uber notes in a

must demonstrate that they have "actual notice" that the defendant "does not intend to comply" with the ADA.  They must also allege that, but for such notice, they would use the services but are currently being deterred from doing so.

Plaintiffs argue that they had actual notice at the time they filed the complaint and thus had standing at the time they filed the complaint.[6]  They argue that they "have pleaded sufficient facts to show they have actual knowledge that Defendants and their vehicles are not in compliance with the ADA."  In support of this statement, they point to the fact that they alleged in the Complaint that "on information and belief," Defendants do not provide any manner for securing a wheelchair accessible vehicle or providing services at all for customers such as Plaintiffs.  Plaintiffs contend that this is an allegation that they have actual notice that Defendants do not intend to comply.  However, this fails to establish Plaintiffs' actual notice.[7]  Without knowing what information Plaintiffs had, the Court is unable to determine from Plaintiffs' allegations whether Plaintiffs had the requisite

footnote that the Fifth Circuit's unpublished opinion in *Bynum v. American Airlines, Inc.*, 166 F.App'x 730 (5th Cir. 2006) suggests that it is a requirement.  Docket no. 6 at 18 n.17.  In *Bynum*, the Fifth Circuit held that a plaintiff lacked standing to assert ADA claims against airlines on which he had never traveled.  *id.* at *3 ("We agree with the district court that Appellant's lawsuit against the airlines for which he had not flown lacked any basis in fact and that he lacked standing to sue these airlines.").  However, there was no analysis of the "futile gesture" exception in § 12188 or whether the plaintiff was aware that those airlines were also allegedly violating the ADA.  Uber also states that *Jolly v. Pappas Restaurants, Inc.*, 189 F.3d 467 (5th Cir. 1999) (unpublished) suggests that it is a requirement, but this Court does not read *Jolly* that way.  There, the plaintiff and his wife had visited the establishment a number of times, but the court found a lack of standing because the restaurant made clear that they would be welcome in the future.  The court held, "a plaintiff seeking injunctive relief based on an alleged past wrong must show that there is a real or immediate threat that he will be wronged again."  *Id.* at *1.  Thus, *Jolly* presents a different situation.

[6] After filing the complaint, Plaintiffs attempted to use Uber and Lyft and allegedly experienced discrimination in violation of the ADA.  Plaintiffs assert that the fact that they were denied services was "no surprise" because "they had actual knowledge that Uber and Lyft's policy was to deny service to disabled individuals."  Docket no. 19 at 2.  While this may be evidence that Plaintiffs' allegations turned out to be correct, it does not show that they had actual notice at the time they filed the complaint.

[7] In their Sur-reply, Plaintiffs again assert that "they had actual notice of Defendants' refusal to provide service to the disabled because of their disabilities" but fail to provide any facts, affidavits, or evidence demonstrating this assertion.  Docket no. 24-1 at 2.

actual notice at the time they filed the Original Complaint.  They may have had sufficient information to qualify as actual notice or they may have been asserting purely speculative claims. Although a plaintiff may assert that the defendant is violating the law "on information and belief" and may obtain discovery to prove such violation, the ADA requires that Plaintiffs demonstrate "actual notice" and Plaintiffs do not need discovery to clarify what information they had before filing suit that would qualify as actual notice.

Further, as noted, Plaintiffs did try to use Uber and Lyft *after* filing the Original Complaint and seek to file an Amended Complaint.  However, Plaintiffs do not refute Defendants' arguments that post-filing events cannot cure a deficiency in standing that existed at the time the Original Complaint was filed.  The argue only that they had standing when their Original Complaint was filed.  Because Plaintiffs have the burden to establish standing and jurisdiction, the Court finds that Plaintiffs have waived any argument that, even if they lacked standing when they filed the Original Complaint, their actions after filing may cure this deficiency.

### Conclusion

In resolving a 12(b)(1) motion, the Court is not limited to the allegations in the Complaint. This Court in *Betancourt* and the Supreme Court in *Laidlaw* considered the plaintiffs' affidavits submitted in opposition to the 12(b)(1) motion to determine whether they had standing.  Therefore, no later than **January 26, 2015**, Plaintiffs are directed to either (1) file affidavits demonstrating that they had actual notice at the time they filed the Original Complaint and that, but for that notice, they would have used Uber and Lyft or (2) voluntarily dismiss the lawsuit without prejudice to refiling pursuant to Rule 41.

SIGNED this 14th day of January, 2015.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE